Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
Tel: 415-217-2000/Fax: 415-217-2040
pcort@earthjustice.org

Kathleen Riley, *Pro Hac Vice*
Neil Gormley, *Pro Hac Vice*
Earthjustice
1001 G St NW, Suite 1000
Washington, DC 20001
Tel: 202-667-4500/Fax: 202-667-2356
kriley@earthjustice.org
ngormley@earthjustice.org

*Counsel for Plaintiffs Sierra Club, Air
Alliance Houston, Center for Biological
Diversity, and Texas Environmental Justice
Advocacy Services*

Zachary Fabish, State Bar No. 247535
Sierra Club
50 F Street, NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for Plaintiff Sierra Club*

Hayden Hashimoto, State Bar No. 325150
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(808) 342-8837
hhashimoto@catf.us

*Counsel for Plaintiffs Citizens for
Pennsylvania's Future and Clean Air
Council*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SIERRA CLUB, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>*Defendant.* | Civil Action No. 3:22-cv-01992-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 8, 2022<br>Time: 10am<br>Place: Courtroom 11, 19th floor<br>Judge: James Donato |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

NOTICE OF MOTION FOR SUMMARY JUDGMENT ..........................................1

MOTION FOR SUMMARY JUDGMENT ...............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................2

INTRODUCTION .....................................................................................................2

STATEMENT OF ISSUES .......................................................................................3

STATEMENT OF FACTS AND LEGAL FRAMEWORK ......................................3

    I.   Ozone seriously harms human health and the environment. ...............................3

    II.   The Clean Air Act prescribes a carefully designed program for controlling ozone pollution.................................................................................................................4

    III.   EPA has repeatedly missed deadlines to control ozone pollution under the 2015 ozone standard.................................................................................................................5

    IV.   To enable downwind areas to demonstrate attainment by the 2024 deadline, pollution reductions must be in effect by the start of the 2023 ozone season. ...........................7

    V.   To enable pollution reductions to take effect by the start of the 2023 ozone season, a final plan must be signed well in advance.......................................................................8

JURISDICTION, VENUE, AND NOTICE ...............................................................8

STANDING ...............................................................................................................9

ARGUMENT ...........................................................................................................13

    I.   EPA has failed to perform its mandatory Clean Air Act duty to issue Good Neighbor plans for New Mexico, Pennsylvania, Utah, and Virginia. ......................................13

    II.   The Court should require EPA to finalize the proposed Good Neighbor plans by December 15, 2022. ..........................................................................................15

        A.   A court order compelling EPA to act expeditiously is necessary and appropriate. .......15

        B.   A December 15, 2022 deadline for Pennsylvania, Utah, and Virginia is expeditious and practicable. ................................................................................................................17

        C.   A 6-month timeframe is appropriate for New Mexico. ...............................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Am. Trucking Ass'ns v. EPA*,
   283 F.3d 355 (D.C. Cir. 2002) ......................................................................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...............................................................................13

*Delaney v. EPA*,
   898 F.2d 687 (9th Cir. 1990) .................................................................17

*Downwinders v. Regan*,
   No. 4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022)....................... 6, 7, 18

*EPA v. EME Homer City Generation*,
   572 U.S. 489 (2014) .................................................................................5

*Friends of the Earth v. Laidlaw Env't Servs.*,
   528 U.S. 167 (2000) ................................................................................9

*Horne v. Flores*,
   557 U.S. 433 (2009) ...............................................................................15

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................9

*New Jersey v. Wheeler*,
   No. 1:19-cv-03247 (D.D.C. Oct. 29, 2019) .............................................6

*NRDC v. EPA*,
   777 F.3d 456 (D.C. Cir. 2014) ..........................................................4, 15

*NRDC v. Train*,
   510 F.2d 692 (D.C. Cir. 1974) ...............................................................13

*NRDC v. Train*,
   545 F.2d 320 (2d Cir. 1976) ...................................................................14

*Sierra Club v. EPA*,
   294 F.3d 155 (D.C. Cir. 2002) ...............................................................16

*Sierra Club v. Johnson*,
   444 F. Supp. 2d 46 (D.D.C. 2006) .........................................................17

*Sierra Club v. Thomas*,
   658 F. Supp. 165 (N.D. Cal. 1987) ..................................................13, 17

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ............................................................................. 17

*Sierra Club v. Wheeler*,
   No. 1:19-cv-02923 (D.D.C. Sept. 30, 2019) ............................................................ 6

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................. 13

*Tennessee Valley Auth. v. Hill*,
   437 U.S. 153 (1978) ........................................................................................... 15

*Train v. NRDC*,
   421 U.S. 60 (1975) ............................................................................................. 16

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) ............................................................................. 15

*United States v. Oakland Cannabis Buyers' Co-Op.*,
   532 U.S. 483 (2001) ........................................................................................... 15

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ........................................................................................... 16

*Wisconsin v. EPA*,
   938 F.3d 303 (D.C. Cir. 2019) ..........................................................5, 7, 16, 18, 19


**Statutes**

5 U.S.C. § 801(a)(3) ................................................................................................ 8, 19

28 U.S.C. § 1331 ........................................................................................................... 8

28 U.S.C. § 1361 ........................................................................................................... 8

28 U.S.C. § 1391(e) ...................................................................................................... 9

42 U.S.C. § 7407(d) ...................................................................................................... 4

42 U.S.C. § 7408(a) ...................................................................................................... 4

42 U.S.C. § 7409 ........................................................................................................... 4

42 U.S.C. § 7410 ..............................................................................3, 5, 6, 8, 14, 15

42 U.S.C. § 7511(a)(1) ..................................................................................4, 5, 7, 15, 19

42 U.S.C. § 7604(a) ............................................................................... 2, 8, 15

42 U.S.C. § 7604(b)(2) ..................................................................................... 8

**Regulations**

40 C.F.R. § 54.1-54.3 ...................................................................................... 8

**Federal Register Notices**

Proposed Cross-State Air Pollution Rule, 75 Fed. Reg. 45,210 (Aug. 2, 2010) ......................... 18

Final Cross-State Air Pollution Rule, 76 Fed. Reg. 48,208 (Aug. 8, 2011) ................................. 18

National Ambient Air Quality Standard for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015) .................................................................................... 3, 5

Proposed Cross-State Air Pollution Rule Update, 80 Fed. Reg. 75,706 (Dec. 3, 2015) ...................................................................................... 18

Final Cross-State Air Pollution Rule Update, 81 Fed. Reg. 74,504 (Oct. 26, 2016) ........ 14, 16, 18

Proposed Cross-State Air Pollutrion Rule Close-Out, 83 Fed. Reg. 31,915 (July 10, 2018) ....................................................................................... 18

Final Cross-State Air Pollution Rule Close-Out, 83 Fed. Reg. 65,878 (Dec. 21, 2018) ............................................................................... 4, 7, 18, 19

Findings of Failure to Submit State Plans under the 2015 Ozone Standard, 84 Fed. Reg. 66,612 (Dec. 5, 2019) ....................................................... 6, 14, 16

Proposed Revised Cross-State Air Pollution Rule Update, 85 Fed. Reg. 68,964 (Oct. 30, 2020) ...................................................................... 18

Final Revised Cross-State Air Pollution Rule Update, 86 Fed. Reg. 23,054 (Apr. 30, 2021) ................................................................................. 8, 18, 19

Proposed Good Neighbor Rule for the 2015 Ozone Standard, 87 Fed. Reg. 20,036 (Apr. 6, 2022) ..................................................... 5, 6, 7, 8, 16, 18, 19

1

**Federal Rules of Civil Procedure**

2

Fed. R. Civ. P. 56(a)....................................................................................................13

3

Fed. R. Civ. P. 56(c)(1)(A)..........................................................................................13

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on September 8, 2022, before the Honorable James Donato, United States District Judge, in Courtroom 11, 9th floor, 450 Golden Gate Avenue, San Francisco, CA, Plaintiffs Sierra Club, Air Alliance Houston, Center for Biological Diversity, Citizens for Pennsylvania's Future, Clean Air Council, and Texas Environmental Justice Advocacy Services (collectively, "Plaintiffs") will and hereby do move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rule 56-1. This motion is based on the points and authorities below, the attached declarations and exhibits, the record of this action, and argument that may be presented at the hearing on this motion.[1]

## MOTION FOR SUMMARY JUDGMENT

To alleviate harmful ozone pollution, or smog, the Clean Air Act imposes a mandatory duty on the Environmental Protection Agency ("EPA") to promulgate plans to implement and achieve the health- and welfare-protective national ambient ozone standards when states fail to do so. This duty includes "Good Neighbor" plans, which are required to ensure that the pollution emitted in upwind states does not significantly contribute to violations of, or interfere with maintenance of, the standards downwind. The deadline for EPA to promulgate federal Good Neighbor plans under the 2015 ozone standard for four states—New Mexico, Pennsylvania, Utah, and Virginia—was January 6, 2022. EPA, however, did not fulfill this duty. EPA is therefore in violation of the Clean Air Act. There is no genuine dispute as to any material fact, and Plaintiffs are entitled to and request summary judgment as a matter of law. Plaintiffs respectfully request that this Court: (1) declare that EPA's failure to complete its mandatory duty

---

[1] Plaintiffs hereby advise the Court that Ms. Riley has fewer than six years' experience and will appear in person to argue Plaintiffs' motion for summary judgment. *See* Standing Order for Civil Cases Before Judge James Donato at ¶ 13.

to promulgate the required federal Good Neighbor plans constitutes an unlawful failure to perform a nondiscretionary act or duty under the Clean Air Act, 42 U.S.C. § 7604(a)(2); and (2) order EPA to sign final federal Good Neighbor plans for Pennsylvania, Utah, and Virginia no later than December 15, 2022, and for New Mexico no later than six months later—*i.e.,* by June 15, 2023. Prompt action is required to limit the serious health and welfare harms ozone pollution causes to Plaintiffs' members and the public, and to effectuate the Act's deadlines for downwind areas to attain the ozone standard.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**INTRODUCTION**

This is a straightforward mandatory duty lawsuit. To implement the Clean Air Act's Good Neighbor provision, EPA was legally required to promulgate Good Neighbor plans under the 2015 ozone standard for four upwind states—New Mexico, Pennsylvania, Utah, and Virginia—no later than January 6, 2022. EPA has not done so. While EPA has now proposed plans for Pennsylvania, Utah, and Virginia, these proposed plans have no effect until finalized, and EPA has not proposed or finalized a plan for New Mexico. EPA's delay violates the Clean Air Act and seriously endangers the health and wellbeing of millions of people who are exposed to unhealthy levels of ozone pollution. Therefore, the agency should be ordered to discharge its statutory obligation without delay.

EPA's delay also frustrates downwind areas' ability to attain the ozone standard "as expeditiously as practicable but not later than" the deadlines for attainment under the Act, including the 2024 attainment deadline. Because downwind areas must rely on data from the year prior to an attainment deadline to demonstrate attainment, pollution reductions must be in effect by the start of the 2023 ozone season on May 1. And because plans take several weeks to

1  publish and only take effect 60 or more days after publication, EPA must sign final federal plans

2  well in advance of May 1, 2023.

3        For these and other reasons described below, Plaintiffs respectfully request this Court

4  establish a deadline of December 15, 2022 for EPA to sign final plans for Pennsylvania, Utah,

5  and Virginia. Because EPA has not yet proposed or finalized a plan for New Mexico, Plaintiffs

6  request a deadline of June 15, 2023—six months after Plaintiffs' requested December 15, 2022

7  deadline—to sign a final plan for New Mexico.

8  **STATEMENT OF ISSUES**

9      1.    Has EPA failed to promulgate federal Good Neighbor plans under the 2015 ozone

10  standards for New Mexico, Pennsylvania, Utah, and Virginia by the January 6, 2022 deadline, as

11  required by 42 U.S.C. § 7410(c)(1)?

12      2.    By what date must EPA take final action to complete that overdue mandatory

13  duty?

14  **STATEMENT OF FACTS AND LEGAL FRAMEWORK**

15  **I.**    **Ozone seriously harms human health and the environment.**

16        Ground-level ozone, also called smog, seriously harms human health and the

17  environment. Exposure to ozone, whether at high levels over short periods of time, or at lower levels

18  sustained over longer periods of time, impairs breathing, inflames lungs, sends people to the hospital,

19  and even kills. *See Am. Trucking Ass'ns v. EPA*, 283 F.3d 355, 359 (D.C. Cir. 2002); *see also,*

20  *e.g.,* National Ambient Air Quality Standard for Ozone, 80 Fed. Reg. 65,292, 65,308/3 to

21  65,309/1 (Oct. 26, 2015). Ozone pollution can harm anyone, but children, elderly people, and

22  people living with asthma and lung disease are more vulnerable. *See* 80 Fed. Reg. at 65,310.

23  Ozone pollution also harms trees and other plants, and the people and animals that rely on them.

24  *See id.* at 65,370/1-2, 65,377/3.

1
2

**II.      The Clean Air Act prescribes a carefully designed program for controlling ozone pollution.**

3              At the "heart" of the Clean Air Act is the requirement that the entire country come into

4     compliance with health- and welfare-protective national ambient air quality standards "as

5     expeditiously as practicable but not later than" specified attainment deadlines. 42 U.S.C.

6     § 7511(a)(1); *see Alabama Power Co. v. Costle*, 636 F.2d 323, 346 (D.C. Cir. 1980); *NRDC v.*

7     *EPA*, 777 F.3d 456, 460 (D.C. Cir. 2014). EPA must set "primary" and "secondary" standards

8     for certain pervasive pollutants, like ozone, to protect public health and welfare, respectively. 42

9     U.S.C. §§ 7408(a), 7409(a)-(b). EPA also must review and, as appropriate, revise these standards

10    at least every five years. *Id.* § 7409(d)(1).

11             After EPA sets or revises a standard, the implementation process begins. Within two

12    years, EPA must "designate" areas as "nonattainment"—not meeting the standard;

13    "attainment"—meeting the standard; or, if EPA lacks information to make a designation,

14    "unclassifiable." 42 U.S.C. § 7407(d)(1)(A)-(B). Simultaneous with designations, the Act

15    requires EPA to classify each ozone nonattainment area based on the severity of its ozone

16    pollution. *Id.* § 7511(a)(1) tbl.1. The classifications and respective attainment deadlines are:

|          |   |                           |
|----------|---|---------------------------|
| Marginal | - | 3 years after designation |
| Moderate | - | 6 years after designation |
| Serious  | - | 9 years after designation |
| Severe   | - | 15 years after designation |
| Extreme  | - | 20 years after designation |

17    *See id.* As EPA has consistently recognized, "data from the calendar year prior to the attainment

18    date . . . are the last data that can be used to demonstrate attainment with the [ozone standard] by

19    the relevant attainment date." Final Cross-State Air Pollution Rule Close-Out, 83 Fed. Reg.

20    65,878, 65,892 (Dec. 21, 2018).

To enable areas to expeditiously attain the standards, the Act also includes a "Good Neighbor" provision that requires "eliminat[ion]" of the pollution from one state that significantly contributes to violations of or interferes with maintenance of the ozone standard downwind "as expeditiously as practicable but not later than" the attainment deadlines. 42 U.S.C. §§ 7410(a)(2)(D)(i)(I), 7511(a)(1); *Wisconsin v. EPA*, 938 F.3d 303, 319 (D.C. Cir. 2019) ("The Clean Air Act requires upwind States to eliminate their significant contributions to downwind ozone nonattainment by prescribed deadlines.").

Within three years after EPA sets or revises a standard, states must adopt and submit to EPA a plan to attain the standard, and to satisfy the Good Neighbor provision. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Act then requires that EPA determine whether states have submitted complete plans within six months, *id.* § 7410(k)(1)(B), and to approve, disapprove, or partially approve and partially disapprove complete plans within one year after that, *id.* § 7410(k)(2). If EPA finds that a state failed to submit a complete plan, or disapproves a state's plan (in whole or in part), EPA must promulgate a federal implementation plan for that state "at any time within 2 years." *Id.* § 7410(c)(1). "EPA is not obliged to wait two years [to issue a federal plan] or postpone its action even a single day." *EPA v. EME Homer City Generation*, 572 U.S. 489, 509 (2014).

### III.    EPA has repeatedly missed deadlines to control ozone pollution under the 2015 ozone standard.

EPA strengthened the ozone standard to 70 parts per billion in October 2015, based on an extensive scientific record demonstrating that the prior ozone standard was inadequate to protect public health and welfare. 80 Fed. Reg. 65,292. EPA found that states were required to submit Good Neighbor plans within three years, or by October 1, 2018, 42 U.S.C. § 7410(a); *see* Proposed Good Neighbor Rule for the 2015 Ozone Standard, 87 Fed. Reg. 20,038 (Apr. 6, 2022),

1    and EPA was required to determine whether states had submitted complete Good Neighbor plans

2    within six months of that date, or by April 1, 2019. *See* 42 U.S.C. § 7410(k)(1)(B).

3         EPA missed the deadline to determine whether at least seven states submitted complete

4    Good Neighbor plans, including New Mexico, Pennsylvania, Utah, and Virginia.[2] As a result,

5    Sierra Club and, separately, the states of New Jersey and Connecticut, filed suit.[3] In response,

6    EPA determined that seven states, including New Mexico, Pennsylvania, Utah, and Virginia, had

7    failed to submit complete Good Neighbor plans. Findings of Failure to Submit State Plans under

8    the 2015 Ozone Standard, 84 Fed. Reg. 66,612 (Dec. 5, 2019) (effective Jan. 6, 2020).

9         This finding triggered EPA's obligation to promulgate federal Good Neighbor plans for

10   these states within two years, by January 6, 2022. 42 U.S.C. § 7410(c)(1). EPA also missed this

11   deadline. *See* Compl. at ¶¶ 10-12.

12        Another group of at least 32 states did submit plans to EPA,[4] but EPA missed the

13   deadline to approve, disapprove, or partially approve and partially disapprove those plans. *See*

14   Consent Decree, *Downwinders v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022). On

15   February 28, 2022, consistent with a consent decree entered by this Court, EPA signed proposed

16   disapprovals of 23 of the 32 states' submitted plans and signed proposed federal Good Neighbor

17   plans for those states. *See* Proposed Good Neighbor Plan for 2015 Ozone Standard, 87 Fed. Reg.

18   20,036 (Apr. 6, 2022). And consistent with the same consent decree, EPA must take final action

---

[2] Complaint, *Sierra Club v. Wheeler*, No. 1:19-cv-02923 (D.D.C. filed Sept. 30, 2019) (regarding Arkansas, Hawaii, Louisiana, Maine, Maryland, Mississippi, New Mexico, Pennsylvania, Rhode Island, Utah, Vermont, and Virginia.); Complaint, *New Jersey v. Wheeler*, No. 1:19-cv-03247 (D.D.C. filed Oct. 29, 2019) (regarding Pennsylvania and Virginia).
[3] *Id.*
[4] Alabama, Arizona, Arkansas, California, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, West Virginia, Wisconsin, and Wyoming.

1    as to these state plans by December 15, 2022. *See* Consent Decree, *Downwinders v. Regan*, No.

2    4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022).

3        At the same time that EPA signed the proposed federal Good Neighbor plans just

4    mentioned, EPA also signed proposed federal Good Neighbor plans for Pennsylvania, Utah, and

5    Virginia. 87 Fed. Reg. 20,036 (Apr. 6, 2022). But EPA has not finalized the proposed Good

6    Neighbor plans for Pennsylvania, Utah, and Virginia, and has neither proposed nor finalized a

7    federal Good Neighbor plan for New Mexico.

8    **IV.    To enable downwind areas to demonstrate attainment by the 2024 deadline,**
9    **pollution reductions must be in effect by the start of the 2023 ozone season.**

10        Pollution from Pennsylvania, Utah, Virginia, and New Mexico contributes to violations

11    of the standard downwind, including in areas in marginal and moderate nonattainment of the

12    2015 standard. *See* Pls.' Exs. 2-4. Marginal nonattainment areas were required to attain and

13    maintain the standard as expeditiously as practicable and not later than August 2021. *See* 42

14    U.S.C. § 7511(a)(1) tbl. 1.[5] Moderate nonattainment areas are required to do so as expeditiously

15    as practicable and not later than August 2024. *See id.*[6] To enable downwind areas to meet the

16    August 2024 deadline, pollution reductions must be in place by the start of the 2023 ozone

17    season on May 1. *See Wisconsin*, 938 F.3d 303, 313 (D.C. Cir. 2019); 83 Fed. Reg. at 65,892

18    ("data from the calendar year prior to the attainment date . . . are the last data that can be used to

19    demonstrate attainment with the [ozone standard] by the relevant attainment date.").

---

[5] *See also* EPA, Ozone NAAQS Timelines, https://www.epa.gov/ground-level-ozone-pollution/ozone-naaqs-timelines (last visited May 25, 2022).
[6] *See id.*

1
2

**V.      To enable pollution reductions to take effect by the start of the 2023 ozone season, a final plan must be signed well in advance.**

3      Final plans do not take effect until at least 60 days after publication,[7] and take several weeks

4  to publish. For example, the final plan under the last ozone standard, set in 2008, was signed on

5  March 15, 2021 but was not published until April 30, 2021 and did not take effect until June 29,

6  2021. *See* Revised Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 86 Fed.

7  Reg. 23,054 (Apr. 30, 2021); *see also* 87 Fed. Reg. 20,036 (signed February 28, 2022, published

8  April 6, 2022). Because the rule took effect after the start of the 2021 ozone season, EPA was not

9  able to require all the necessary pollution reductions. 86 Fed. Reg. 23,054 (Apr. 30, 2021).

10                          **JURISDICTION, VENUE, AND NOTICE**

11      This Court has jurisdiction under the Clean Air Act's citizen suit provision, which

12  authorizes district courts to hear actions brought by "any person" to compel EPA to perform

13  "any act or duty" under the Act "which is not discretionary with [EPA]." 42 U.S.C. § 7604(a)(2);

14  *id.* § 7410(a)(2)(D)(i)(I), (c)(1); *see also* 28 U.S.C. § 1331 (federal question jurisdiction); 28

15  U.S.C. § 1361 (action to compel an officer of the U.S. to perform their duty). EPA's failure to

16  promulgate final Good Neighbor plans for New Mexico, Pennsylvania, Utah, and Virginia by

17  January 6, 2022, is a failure to perform an action that is not discretionary, as explained herein.

18      By certified mail postmarked January 7, 2022, with a courtesy copy sent by electronic

19  mail, Plaintiffs provided the Administrator with written notice of this action as required by the

20  Clean Air Act, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. § 54.1-54.3. *See* Pls.' Ex. 1; Answer at

21  ¶ 12.

---

[7] The Congressional Review Act requires that any major rule published in the Federal Register shall take effect no earlier than 60 days after the publication date. 5 U.S.C. § 801(a)(3).

Venue is proper in this Court under 28 U.S.C. § 1391(e) because this suit names an officer of an agency of the United States acting in his official capacity, no real property is involved in this action, and Plaintiff Sierra Club resides in this judicial district. Compl. at ¶ 13. Additionally, EPA maintains an office in San Francisco. Answer at ¶ 13.

## STANDING

Plaintiffs have standing to bring this lawsuit on behalf of their members. *See Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 181 (2000); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs' members live, work, and recreate in areas that have unhealthy ozone levels due in part to pollution that is emitted in and travels from the four states at issue. *See* Cummings at ¶ 8; Silber at ¶¶ 2, 4; Reading at ¶¶ 2, 11; Minott at ¶¶ 9, 13; Horwatt at ¶¶ 6, 13; Jones at ¶¶ 7-8; Guldi at ¶¶ 2, 3; Mannchen at ¶¶ 2, 3; Hadayia at ¶ 6; DiMarzio at ¶¶ 1, 5; Pls.' Exs. 2-4. EPA's failure to issue plans to control interstate ozone pollution from these four states prolongs and increases Plaintiffs' members' exposure to elevated ozone levels and the physical, emotional, recreational, and aesthetic harms they suffer as a result.

Brendan Cummings lives in Joshua Tree, California and enjoys hiking, backpacking, and observing local plants and wildlife in Joshua Tree National Park and across the California desert, but he avoids spending time outdoors when the air quality is bad. Cummings at ¶ 8. According to EPA data, these nonattainment areas receive ozone pollution from New Mexico and Utah. *Id.* at ¶ 10; Pls.' Exs. 2-4.

Scott Silber lives in Boulder, Colorado and suffers from asthma. Silber at ¶ 4. Scott checks ozone levels in his area several times a day, and he avoids the outdoor activities he enjoys—trail running, hiking, rock climbing, and playing ultimate frisbee—when ozone levels are high. *Id.* at ¶ 4. During periods where ozone pollution is especially high, Scott has to use his rescue inhaler every day. *Id.* at ¶ 5. This and the other medications Scott needs to control the

1    symptoms triggered by high ozone pollution are expensive and have unpleasant side effects. *Id.*

2    at ¶¶ 5-7.

3         Rich Reading lives in nearby Denver, Colorado and also suffers from asthma. Reading at

4    ¶¶ 2, 6. Like Scott, Rich follows the daily air report and limits the outdoor activities he enjoys,

5    such as biking, running, gardening and birdwatching, when air quality is poor. *Id.* at ¶¶ 6, 8. Rich

6    also has to pay for medications and doctor visits to control his asthma symptoms triggered by

7    ozone pollution. *Id.* at ¶ 7. Rich also invested in central air conditioning, a significant expense, at

8    the recommendation of his doctor to filter the air coming into his home. *Id.*

9         According to EPA data, the Denver Metro/North Front Range nonattainment area, which

10   also includes Boulder County, receives ozone pollution from New Mexico and Utah. *See* Silber

11   at ¶ 2; Reading at ¶ 11; Pls.' Exs. 2-4.

12        Scott also spends time visiting family in Philadelphia and Bucks Counties,

13   Pennsylvania—and has to bring all of his medications. Silber at ¶¶ 1, 5. Scott would like to visit

14   family and travel without the stress and worry that he may forget or lose his medications. *Id.*

15        Joseph Minott lives in Philadelphia, Pennsylvania and suffers from sarcoidosis, a

16   breathing condition aggravated by ozone pollution, which causes shortness of breath, wheezing,

17   and chest pain. Minott at ¶¶ 13, 15. Joseph enjoys being outside, including running, but curtails

18   his time outdoors when ozone pollution is high. *Id.* at ¶ 16.

19        Kathleen Horwatt is 72 years old and a cancer survivor, and lives in Bucks County,

20   Philadelphia. Horwatt at ¶¶ 4-6. Kathleen enjoys spending time outdoors gardening, playing with

21   her grandchildren, and walking around her neighborhood, and she plans to continue being active

22   outdoors, but she worries that the air where she lives may make her vulnerable to breathing

23   problems when she spends time outdoors. *Id.* at ¶¶ 7-8, 13.

In addition to being in Pennsylvania, one of the states at issue, EPA data shows the Philadelphia-Wilmington-Trenton nonattainment area, which also includes Bucks County, receives ozone pollution from New Mexico, Utah, and Virginia. *See* Minott at ¶ 9; Horwatt at ¶ 11; Silber at ¶ 2; Jones at ¶ 7; Pls.' Exs. 2-4.

Christine Guldi lives in Dallas, Texas and suffers also from asthma, as well as coronary artery disease and allergies. Guldi at ¶ 3. Christine enjoys taking walks outdoors and, while she has long avoided being outdoors in the afternoons to avoid high ozone pollution, lately she has had to avoid getting outside almost entirely to avoid triggering her symptoms. *Id.* at ¶ 5. According to EPA data, the Dallas-Fort Worth nonattainment area receives pollution from New Mexico, Pennsylvania, and Utah. *See id.* at ¶ 2; Pls.' Exs. 2-4.

Brandt Mannchen lives in Houston, Texas and suffers from allergies exacerbated by ozone pollution. Mannchen at ¶¶ 2, 5. Brandt avoids taking walks or birdwatching when ozone pollution is high, such as in the afternoon, because he worries about the effect of this pollution on his health. *Id.* at ¶¶ 5-7. Jennifer Hadayia also lives in Houston, Texas. Jen has difficulty breathing outdoors when ozone pollution is high and spends less time outdoors than she would like as a result. Hadayia at ¶ 2. According to EPA data, the Houston-Galveston-Brazoria nonattainment area receives ozone pollution from all four of the states at issue. *See* Mannchen at ¶ 3; Hadayia at ¶ 6; Pls.' Exs. 2-4.

Elspeth Cordua DiMarzio lives in Las Vegas, Nevada and also suffers from allergies exacerbated by air pollution. DiMarzio at ¶¶ 1, 4. Elspeth enjoys running half marathons, but has to skip training runs when ozone levels are high. *Id.* at ¶ 4. According to EPA data, the Las Vegas nonattainment area receives ozone pollution from New Mexico and Utah. *See id.* at ¶ 5; Pls.' Exs. 2-4.

1      Anna Mohr-Almeida is 19 years old and lives in Mesa, Arizona. She enjoys spending

2  time outdoors walking around the Tempe Marketplace; protesting for clean air, clean water,

3  climate action, and biodiversity; as well as hiking; biking; and swimming. Mohr-Almeida at

4  ¶¶ 3-4. Anna suffers from chronic bronchitis and has trouble breathing after she has spent time

5  outdoors breathing ozone pollution, which also interferes with her indoor activities such as

6  professional roller skating. *Id.* at ¶¶ 5-6. She keeps an inhaler with her whenever she skates. *Id.*

7  at ¶ 6. Sometimes her trouble breathing continues into the night. *Id.*

8      Sandra Bahr also lives in nearby Phoenix, Arizona. Bahr at ¶ 2. She enjoys spending

9  outdoors among the desert wildflowers, palos verdes, ironwoods, and cacti, but she worries about

10  the effect of ozone pollution on her health and on the natural places she enjoys. *Id.* at ¶¶ 6, 9.

11      According to EPA data, the Phoenix-Mesa nonattainment area receives ozone pollution

12  from Utah and New Mexico. *See* Mohr-Almeida at ¶ 2; Bahr at ¶ 3; Pls.' Exs. 2-4.

13      Deeda Seed lives in Salt Lake City, Utah and also has trouble breathing when ozone

14  pollution is high. Seed at ¶¶ 2, 5. She enjoys spending time outdoors hiking, backpacking,

15  camping, and birding. *Id.* at ¶ 4. She checks the air quality every day and avoids outdoor

16  activities on days when ozone pollution is high. *Id.* at ¶ 6. She worries about the effect of ozone

17  pollution on her own health, the health of her son, and the health of her husband, who suffers

18  from chronic obstructive pulmonary disease, or COPD. *Id.* at ¶ 7. Utah itself is one of the states

19  at issue and, according to EPA data, the Northern Wasatch Front nonattainment area, which

20  includes Salt Lake County, receives pollution from New Mexico. *See id.* at ¶ 9; Pls.' Exs. 2-4.

21      As described above, Plaintiffs and their members are harmed by EPA's failure to control

22  interstate ozone pollution from New Mexico, Pennsylvania, Utah, and Virginia. The Court can

23  redress these injuries by ordering EPA to finalize federal plans that satisfy the Good Neighbor

provision. By eliminating emissions that contribute to unhealthy air downwind, the required

Good Neighbor plans will reduce Plaintiffs' members' exposure to ozone pollution and the

physical, emotional, recreational, and aesthetic harms they suffer. *See Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 107 (1998) (relief that remedies the injury suffered is "the very essence of

the redressability requirement").

## ARGUMENT

Summary judgment must be granted when, viewing the facts in the light most favorable

to the nonmoving party, the record shows "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving

party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

cite "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986); *accord* Fed. R. Civ. P. 56(c)(1)(A).

In ordering appropriate relief, a district court should compel EPA to correct its statutory

violations as soon as possible. *NRDC v. Train*, 510 F.2d 692, 705, 712-13 (D.C. Cir. 1974).

Where there is a clear statutory deadline, EPA bears the "heavy" burden of proving that

expeditious compliance would be impossible. *Sierra Club v. Thomas*, 658 F. Supp. 165, 170-71

(N.D. Cal. 1987) (citing *Train*, 510 F.2d 692).

**I.     EPA has failed to perform its mandatory Clean Air Act duty to issue Good
       Neighbor plans for New Mexico, Pennsylvania, Utah, and Virginia.**

EPA had a mandatory duty under the Clean Air Act to issue federal Good Neighbor plans

for New Mexico, Pennsylvania, Utah, and Virginia by the statutory deadline of January 6, 2022.

EPA failed to do so.

Congress commanded that EPA "shall promulgate a Federal implementation plan at any

time within 2 years after the Administrator [] finds that a State has failed to make a required

1   [plan] submission." 42 USC § 7410(c)(1). On its face, the duty to promulgate a federal plan

2   within two years of the finding is non-discretionary under the Act. *See NRDC v. Train*, 545 F.2d

3   320, 324-25, 327 (2d Cir. 1976) (holding that EPA had non-discretionary duty under the Clean

4   Air Act where statute used the "mandatory" term "shall" and included "a specific timetable").

5   Further, EPA has conceded through its public statements that it was required to promulgate the

6   required plans within two years. *See* 84 Fed. Reg. at 66,614 (referencing "the obligation of the

7   EPA to promulgate [Federal Implementation Plans] for these states within two years of this

8   finding.") (dated Dec. 5, 2019; effective Jan. 6, 2020).

9          Federal Good Neighbor plans for New Mexico, Pennsylvania, Utah, and Virginia are

10  overdue. Effective January 6, 2020, EPA found that New Mexico, Pennsylvania, Utah, and

11  Virginia each "failed to make a required [Good Neighbor plan] submission." 42 USC

12  § 7410(c)(1); 84 Fed. Reg. at 66,614. Thus, federal Good Neighbor plans were due no later than

13  two years from that date, on January 6, 2022. *See* 42 USC § 7410(c)(1); 84 Fed. Reg. at 66,614.

14  But EPA has failed to issue these plans. *See* Compl. at ¶¶ 8-9; Answer at ¶ 8 (admitting that EPA

15  has not finalized federal Good Neighbor plans for Pennsylvania, Utah, and Virginia, and has

16  neither proposed nor finalized a federal Good Neighbor plan for New Mexico). While the agency

17  has *proposed* federal Good Neighbor plans for Pennsylvania, Utah, and Virginia, it has not

18  finalized them, and mere proposals have no legal effect until they are finalized. Compl. at ¶¶ 8,

19  39; Answer at ¶ 8, 39; *see also* Final Cross-State Pollution Rule Update, 81 Fed. Reg. 74,504,

20  74,512 (Oct. 26, 2016) ("The EPA's proposal was not the 'promulgation' of a FIP."). Further,

21  EPA has neither proposed nor finalized a federal Good Neighbor plan for New Mexico. Compl.

22  at ¶¶ 8, 39; Answer at ¶ 8, 39. These facts are beyond dispute.

1    Because it is undisputable that EPA has not promulgated Good Neighbor plans for New

2    Mexico, Pennsylvania, Utah, and Virginia by the statutory deadline or since, a failure that

3    constitutes a violation of a nondiscretionary duty mandated by the Clean Air Act, EPA has

4    plainly violated the law. Plaintiffs are entitled to summary judgment finding EPA liable for its

5    violation.

6    **II.    The Court should require EPA to finalize the proposed Good Neighbor plans by**
7    **December 15, 2022.**

8        **A.    A court order compelling EPA to act expeditiously is necessary and**
9        **appropriate.**

10    Because Congress specified precisely what EPA must do, and EPA has not done it, this

11    Court must issue an order compelling EPA to complete its duty forthwith. 42 U.S.C. § 7604(a).

12    "Once Congress, exercising its delegated powers, has decided the order of priorities in a given

13    area, it is for the courts to enforce them when enforcement is sought. Courts of equity cannot, in

14    their discretion, reject the balance that Congress has struck in a statute." *United States v.*

15    *Oakland Cannabis Buyers' Co-Op.*, 532 U.S. 483, 497 (2001) (internal citation and quotation

16    and alteration marks omitted); *see also Horne v. Flores*, 557 U.S. 433, 450 (2009) ("It goes

17    without saying that federal courts must vigilantly enforce federal law and must not hesitate in

18    awarding necessary relief."); *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 173 (1978); *United*

19    *States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016).

20    Moreover, an order requiring prompt compliance is necessary to effectuate the health and

21    welfare protections of the Clean Air Act. The Act requires attainment of ozone standards "as

22    expeditiously as practicable but not later than" specified deadlines. 42 U.S.C. § 7511(a)(1);

23    *NRDC v. EPA*, 777 F.3d 456, 460 (D.D.C. 2019). And, to ensure timely attainment, the Act also

24    specifies earlier deadlines for state and federal plans implementing the ozone standard, including

25    plans to implement the Good Neighbor provision. 42 U.S.C. §§ 7410(a); (c)(1). EPA itself has

determined that New Mexico, Pennsylvania, Utah, and Virginia failed to timely submit adequate

plans to control the ozone pollution that originates within their borders. 84 Fed. Reg. 66,612.

Federal plans are therefore necessary to implement the Good Neighbor provision, and EPA's

delay "subverts [the statutory] scheme," *Wisconsin*, 938 F.3d 303, 316 (D.C. Cir. 2019), and

contravenes Congress's decision to "eliminate[ EPA's] regulatory discretion" in crafting the

Act's ozone provisions. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 484 (2001). Indeed,

unchecked ozone pollution from these states undermines the core command of the Clean Air Act:

timely attainment of the national ambient air quality standards. *Sierra Club v. EPA*, 294 F.3d 155,

161 (D.C. Cir. 2002) (timely attainment is "central to the . . . regulatory scheme") (quoting *Union

Elec.*, 427 U.S. at 258); *Train v. NRDC*, 421 U.S. 60, 66-67 (1975) (attainment deadlines are the

"heart" of the Act).

EPA's proposed plans for Pennsylvania, Utah, and Virginia do not satisfy the statutory

obligation. *See* 87 Fed. Reg. 20,036. The mere existence of a proposal does not have any effect

on the Agency's discretion to decide whether or not to take a final action, or provide any clear

indication of a date by which EPA may take final Agency action. The proposal also does not

impose any requirements that would address significant contributions to downwind

nonattainment or interference with maintenance, and therefore cannot satisfy EPA's statutory

obligation. *See* 87 Fed. Reg. 20,036; *see also* 81 Fed. Reg. at 74,512 ("The EPA's proposal was

not the 'promulgation' of a FIP."). And EPA has not yet taken even the initial step of proposing a

plan for New Mexico.

So long as EPA delays promulgating final Good Neighbor plans, it delays controls the

Act requires to curb pollution from New Mexico, Pennsylvania, Utah, and Virginia that

contributes to ozone levels that EPA agrees are unsafe in communities where Plaintiffs'

members live, work, and recreate. *See* Cummings at ¶¶ 7-8; Silber at ¶¶ 2, 4; Reading at ¶¶ 2, 11;

Minott at ¶¶ 9, 13; Horwatt at ¶¶ 6, 13; Jones at ¶ 7-8; Guldi at ¶¶ 2, 3; Mannchen at ¶¶ 2, 3;

Hadayia at ¶ 6; DiMarzio at ¶¶ 1, 5; Pls.' Exs. 2-4.

    **B.**    **A December 15, 2022 deadline for Pennsylvania, Utah, and Virginia is expeditious and practicable.**

When Congress "categorically mandate[s]" that EPA meet explicit deadlines, as it has

here, EPA is "deprive[d] of all discretion over the timing of its work." *Sierra Club v. Thomas*,

828 F.2d 783, 791 (D.C. Cir. 1987). Violations of such statutory deadlines should be corrected

"as soon as possible," using all available means. *Delaney v. EPA*, 898 F.2d 687, 691 (9th Cir.

1990). Enforcement of statutory date-certain deadlines is of the "utmost importance." *Sierra*

*Club v. Johnson*, 444 F. Supp. 2d 46, 53 (D.D.C. 2006). Thus, an agency seeking to avoid a

prompt remedy carries a "heavy" burden to demonstrate faster compliance is impossible. *Sierra*

*Club v. Thomas*, 658 F. Supp. at 170-71 (citing *Train*, 510 F.2d 692); see also *Train*, 510 F.2d at

712-13.

A December 15, 2022 deadline for EPA to sign final plans for Pennsylvania, Utah, and

Virginia is eminently possible. As shown in the table below, when subject to a court-ordered

deadline, EPA has been able to finalize proposed federal Good Neighbor plans and related

actions under prior ozone standards in just five months. Even when not subject to a court-ordered

deadline, EPA has finalized proposed federal plans in ten and twelve months.

| Rule | Proposed | | Final | | Approximate time from proposal to final action |
|---|---|---|---|---|---|
| | Signed | Published | Signed | Published | |
| Revised CSAPR Update | Oct. 10, 2020 | 85 Fed. Reg. 68,964 (Oct. 30, 2020) | Mar. 15, 2021 | 86 Fed. Reg. 23,054 (Apr. 30, 2021) | 5 months |

| Rule | Proposed | | Final | | Approximate time from proposal to final action |
|------|----------|--|-------|--|----------|
| | Signed | Published | Signed | Published | |
| CSAPR Close-Out | June 29, 2018 | 83 Fed. Reg. 31,915 (July 10, 2018) | Dec. 6, 2018 | 83 Fed. Reg. 65,878 (Dec. 21, 2018) | 5 months |
| CSAPR Update | Nov. 16, 2015 | 80 Fed. Reg. 75,706 (Dec. 3, 2015) | Sept. 7, 2016 | 81 Fed. Reg. 74,504 (Oct. 26, 2016) | 10 months |
| CSAPR | July 6, 2010 | 75 Fed. Reg. 45,210 (Aug. 2, 2010) | July 6, 2011 | 76 Fed. Reg. 48,208 (Aug. 8, 2011) | 12 months |

Here, EPA signed proposed federal plans for Pennsylvania, Utah, and Virginia on February 28, 2022, and a December 15, 2022 deadline—more than nine months later—is more than possible.

Additionally, this deadline is consistent with a negotiated deadline of December 15, 2022 for EPA to finalize its proposed approval or disapproval of state plans for other states included in EPA's proposed Good Neighbor rule.[8] In prior Good Neighbor rulemakings, EPA has taken final action on state plans and issued federal plans together in a single action. 86 Fed. Reg. at 23,068; 76 Fed. Reg. at 48,219.

Plaintiffs' requested December 15, 2022 deadline is also necessary to protect public health during the 2023 ozone season, which begins May 1, and to align EPA's satisfaction of its Good Neighbor obligations with downwind attainment deadlines. See Wisconsin, 938 F.3d 303, 318 (D.C. Cir. 2019). Here, the 2021 attainment deadline for downwind marginal nonattainment areas has already passed. Upwind states have therefore been fouling the air in downwind states for several years beyond what the Clean Air Act allows, causing illness, death, and harm to the

[8] See Consent Decree, Downwinders v. Regan, No. 4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022) (Alabama, Arizona, Arkansas, California, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Jersey, New York, Ohio, Oklahoma, Tennessee, Texas, West Virginia, Wisconsin, and Wyoming).

environment each ozone season. They should not be permitted to continue doing so during yet another ozone season in 2023.

Moreover, EPA should be required to implement the Good Neighbor provision in line with the next attainment deadline, for moderate nonattainment areas, in August 2024.[9] *Wisconsin*, 938 F.3d at 318. Because "data from the calendar year prior to the attainment date . . . are the last data that can be used to demonstrate attainment with the [ozone standard] by the relevant attainment date," pollution reductions must be in effect by the 2023 ozone season, which begins May 1. 83 Fed. Reg. at 65,892. And because final plans usually take several weeks to publish and do not take effect until at least 60 days after publication,[10] EPA must sign the final plans well in advance of May 1, 2023.[11] Accordingly, the Court should order EPA to sign final federal plans for Pennsylvania, Utah, and Virginia by December 15, 2022, to enable downwind areas to demonstrate attainment with the 2024 attainment deadline for moderate nonattainment areas; avoid further frustration of the 2021 attainment deadline for marginal nonattainment areas; and prevent additional damage to human health and the environment during the 2023 ozone season.

### C.    A 6-month timeframe is appropriate for New Mexico.

Because EPA has not yet proposed a federal Good Neighbor plan for New Mexico, Plaintiffs respectfully request that the Court direct EPA to promulgate a federal plan for New

---

[9] *See* 42 U.S.C. § 7511(a)(1) tbl.1; EPA, Ozone NAAQS Timelines, https://www.epa.gov/ground-level-ozone-pollution/ozone-naaqs-timelines (last visited May 25, 2022).

[10] The Congressional Review Act requires that any major rule published in the Federal Register shall take effect no earlier than 60 days after the publication date. 5 U.S.C. § 801(a)(3).

[11] The final plan under the last ozone standard, set in 2008, was signed March 15, 2021, but was not published until April 30, 2021, and did not come in to effect until June 29, 2021—well into the 2021 ozone season. *See* Revised Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23,054 (Apr. 30, 2021). As a result, EPA was not able to achieve the necessary pollution reductions during the full 2021 ozone season. *Id.*

---

1   Mexico no later than six months after signing final plans for Pennsylvania, Utah, and Virginia—

2   *i.e.,* by June 15, 2023. This deadline is possible and necessary to avoid further frustration of

3   downwind attainment and to protect public health. As shown in the table below, EPA has

4   proposed and finalized similar actions under the prior ozone standard within six and seven

5   months.

| Rule | Date of court order | Deadline for proposed action | Deadline for final action | Approximate time from order to final action |
|---|---|---|---|---|
| CSAPR Close-Out | June 12, 2018[12] | June 29, 2018 | December 6, 2018 | 6 months |
| Revised CSAPR Update | July 28, 2020[13] | October 1, 2020 | Mar. 15, 2021 | 7 months |

6

7                                   **CONCLUSION**

8          For the foregoing reasons, Plaintiffs respectfully request that this Court enter summary

9   judgment in their favor; declare EPA to be in violation of its mandatory Clean Air Act duty to

10  promulgate federal Good Neighbor plans for New Mexico, Pennsylvania, Utah, and Virginia by

11  January 6, 2022; and order EPA to complete its overdue duties by promulgating final federal

12  Good Neighbor plans for Pennsylvania, Utah, and Virginia by December 15, 2022 and for New

13  Mexico six months later, by June 15, 2023.

14  DATED: July 7, 2022

15  Respectfully Submitted,

/s/ Hayden Hashimoto
Hayden Hashimoto, State Bar No. 325150
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(808) 342-8837

/s/ Kathleen Riley
Kathleen Riley, *Pro Hac Vice*
Neil Gormley, *Pro Hac Vice*
Earthjustice
1001 G St NW, Suite 1000
Washington D.C 20001

---

[12] Order, New York v. Pruitt, No. 1:18-cv-00406-JGK (S.D.N.Y. June 12, 2018).
[13] Order, New Jersey v. Wheeler, No. 1:20-cv-01425-JGK (S.D.N.Y. July 28, 2020).

hhashimoto@catf.us

*Counsel for Plaintiffs Citizens for
Pennsylvania's Future and Clean Air
Council*

(202) 667-4500
kriley@earthjustice.org
ngormley@earthjustice.org

Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
pcort@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

*Counsel for Plaintiffs Sierra Club, Air Alliance
Houston, Center for Biological Diversity, and
Texas Environmental Justice Advocacy
Services*

Zachary M. Fabish, State Bar No. 247535
Sierra Club
50 F Street, NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for Plaintiff Sierra Club*

1